IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INTERCEPTION OF WIRE AND ELECTRONIC COMMUNICATIONS WITH PRECISION GPS LOCATION UNDER SEAL TO AND FROM U.S. CELLULAR NUMBER (304) 702-8668 **(TT4)** | Case No. 3:18MC97<br><br>**Filed Under Seal** |

FILED
AUG 29 2018
U.S. DISTRICT COURT-WVND
MARTINSBURG, WV 25401

## ORDER AUTHORIZING INTERCEPTION OF
## WIRE AND ELECTRONIC COMMUNICATIONS

Application having been made pursuant to the authority of a specially designated representative of the Attorney General of the United States satisfying the dictates of Title 18, United States Code, § 2516(1), and presented to the court by Lara K. Omps-Botteicher, Assistant United States Attorney for the Northern District of West Virginia, and C. Lydia Lehman, Special Assistant United States Attorney for the Northern District of West Virginia, an "Investigative or Law Enforcement Officer" of the United States within the meaning of Title 18, United States Code, § 2510(7) for an order authorizing the interception of wire and electronic communications pursuant to 18 U.S.C. § 2518, and full consideration having been given in the matter set forth herein and in supporting documents, the Court finds:

1. There is probable cause to believe that COURTNEY GUESS (herein referred to as "GUESS"), CHARLES PALMER also known as "nephew" (herein referred to as "PALMER"), JESSICA NICHOLSON (herein referred to as "NICHOLSON"), ANTHONY HARRISON also known as "Ant" (herein referred to as "HARRISON"), WARREN BROWN also known as "Man Man," ARIEL AKERS, MATTHEW RILEY, JOSHUA MILLER, TAMMY BARRICK, HETZEL KERNS, DAVID HUNTSBERRY, UNSUB1 also known as "Big Homie," CHAD HITE, and others as yet unknown (the SUBJECTS) are committing, have committed, and will continue to commit particular federal felony offenses enumerated in 18 U.S.C. § 2516(3);

2. There is probable cause to believe that particular wire and electronic communications, including text messages, of the above persons concerning federal felony offenses will be obtained through such interception;

3. It has been adequately demonstrated that normal investigative procedures have been tried and have failed to uncover the specifics of the above-described offenses, reasonably appear unlikely to further succeed if tried, or are too dangerous to attempt, and

4. There is probable cause to believe that the facility from which the wire and electronic communications are to be intercepted is being used and will continue to be used in connection with the commission of such offenses.

5. Pursuant to Title 18, United States Code, § 2518(4), the Court specifies:

   a. The identities of the persons, to the extent known, whose communication are to be intercepted are:

   COURTNEY GUESS (herein referred to as "GUESS"), CHARLES PALMER also known as "nephew" (herein referred to as "PALMER"), JESSICA NICHOLSON (herein referred to as "NICHOLSON"), ANTHONY HARRISON also known as "Ant" (herein referred to as "HARRISON"), WARREN BROWN also known as "Man Man," ARIEL AKERS, MATTHEW RILEY, JOSHUA MILLER, TAMMY BARRICK, HETZEL KERNS, DAVID HUNTSBERRY, UNSUB1 also known as "Big Homie," CHAD HITE, and other individuals yet to be identified;

   b. The communication facility as to which authority to intercept is HEREBY GRANTED for:

   Wire and electronic communications occurring over U.S. Cellular telephone number (304) 702-8668, Mobile Equipment Identifier (MEID) 089353063203217777 (**TT4**). According to records obtained from U.S. Cellular, individual subscriber information for **TT4** yields the name Jenah Smith residing at 220 Surrey Court, Martinsburg, West Virginia. It should be noted that investigative database research revealed no person by the name of Jenah Smith. Additionally, investigators have confirmed NICHOLSON to be residing at 222 Surrey Court, Martinsburg, West Virginia. Based upon knowledge derived from the investigation referenced below, investigators believe **TT4** is in the possession of, and/or under the dominion control of, and used by NICHOLSON, and others yet unknown. Investigative actions conducted by the Federal Bureau of Investigation have revealed this phone is being used by NICHOLSON and other individuals yet to be fully identified.

   c. The authorization given is intended to apply not only to the target telephone numbers listed above, but also to any other telephone numbers subsequently assigned to or used by the instrument bearing the same mobile equipment identifier ("MEID") used by the target telephones, and to any other MEIDs to which the target telephone numbers referenced above are assigned, within the thirty-day period. The authorization is also intended to apply to the target telephone number referenced above regardless of service provider, and to background conversations intercepted in the vicinity of the target telephone while the telephone is off the hook or otherwise in use.

   d. The particular description of the type of communications sought to be intercepted, and a statement of the particular offenses to which they relate:

      a. The wire and electronic communications, including text messages (including background conversations intercepted in the vicinity of **TT4** while the phone is off the hook or otherwise in use) are expected to concern discussions of the

specifics of the narcotics offenses described below, including the manner and means of the commission of the offenses, the identities of all participants and the locations at which these offenses are being committed.

e. The particular offenses[1] (the "TARGET OFFENSES") to which they relate and which are being committed by the target interceptees are:

   a. 21 U.S.C. § 841 – Possession with the intent to distribute and distribution of a controlled substance, namely heroin and cocaine base;

   b. 21 U.S.C. § 843(b) – Use of a communication facility to further the commission of a felony controlled substance offense;

   c. 21 U.S.C. § 846 – Conspiracy to possess with the intent to distribute and to distribute controlled substances; and

   d. 18 U.S.C. § 1952 – Interstate travel in aid of unlawful activity.

f. The identity of the agency authorized to intercept the communications and of the person authorizing the application:

   i. Federal Bureau of Investigation ("FBI");

   ii. Lara K. Omps-Botteicher, Assistant United States Attorney for the Northern District of West Virginia and C. Lydia Lehman, Special Assistant United States Attorney for the Northern District of West Virginia; and,

g. The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communications have been first obtained:

**WHEREFORE, IT IS HEREBY ORDERED** pursuant to Section 2518 of Title 18, United States Code, Special Agents of the Federal Bureau of Investigation (FBI), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and other duly authorized state and local law enforcement officers working under the supervision of the FBI, and personnel acting under contract to and the supervision of FBI and ATF pursuant to an application authorized by Raymond Hulser, Deputy Assistant Attorney General, a duly designated official of the Criminal Division, United States Department of Justice, who has been specially designated by the Attorney General of the United States, pursuant to Order Number 3854-2017, dated February 27, 2017, to exercise the power conferred on that official by Section 2516 of Title 18, United States Code, are authorized to intercept wire and electronic communications to and from **TT4**. Attached to the Government's application for this Order, and incorporated into this Order, are copies of the Attorney General's Order of special designation and the Memorandum of Authorization approving this application.

---

[1] Although aiding and abetting under 18 U.S.C. § 2 is not a predicate offense enumerated in 18 U.S.C. § 2516, there is also probable cause to believe that the SUBJECTS of this investigation have aided and abetted one another in committing enumerated offenses.

3

**IT IS ORDERED** that such interceptions shall not automatically terminate when the type of communications described have first been obtained, but shall continue until communications are intercepted that fully reveal the manner in which the individuals listed herein, and others as yet unknown or unidentified, participate in the specified offenses and fully reveal the identities of their co-conspirators, their place of operation, and the full nature of the conspiracy involved, or for a period of thirty (30) days, whichever is earlier. This time shall be measured from the day on which the investigative or law enforcement officers first begin to conduct an interception under this Order, or ten (10) days from the date of this Order, whichever is earlier.

**IT IS FURTHER ORDERED** that U.S. Cellular, their agents and employees, shall furnish the applicant forthwith all information, facilities and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such service provider is according the person whose communications are to be intercepted. The service provider shall be compensated by the FBI for reasonable expenses incurred in providing such facilities and assistance.

**IT IS FURTHER ORDERED** that, pursuant to Title 18, United States Code, Section 2703(c)(1)(B) and (d), U.S. Cellular or any other subsequent service provider, providers of electronic communications services as defined in Title 18, United States Code, Section 2510(15), shall disclose to the applicant and the FBI the following information relevant to this investigation, as set forth in Title 18, United States Code, Section 2703(c)(2)(A)-(F), pertaining to **TT4** and the telephone numbers assigned to or used by telephones or other devices that place or send wire or electronic communications to, or receive wire or electronic communications from, **TT4**, within 24 hours of said request, including weekends and holidays, there being offered specific and articulable facts showing that there are reasonable grounds to believe that the information sought is relevant and material to an ongoing criminal investigation as set forth more fully in the affidavit: subscriber name; subscriber address; historical local and long distance telephone connection records, or records of session times and durations; length of service (including start date) and types of services utilized; telephone or instrument number or other subscriber identification number (including but not limited to International Mobile Subscriber Identity number, Mobile Subscriber Identity Number, International Mobile Equipment Identity number, Universal Mobile Equipment Identity number, Electronic Serial Number, and Mobile Equipment Identity number); and means and source of payment for service (including any credit card or bank account number).

**IT IS FURTHER ORDERED**, pursuant to 18 U.S.C. § 2703(c)(1)(A), Federal Rule of Criminal Procedure 41, and 18 U.S.C. § 3122-24, that agents of the FBI are authorized to ascertain the physical location of **TT4** during the authorized period of interception and to obtain information regarding the location of **TT4** during the 60 days preceding the date of this Order (the "Requested Location Information"). There is probable cause to believe that the location of **TT4** during that period will constitute evidence of the TARGET OFFENSES. The Requested Location Information includes, but is not limited to: real-time E-911 Phase II data or other precise location information concerning **TT4**; records reflecting the cell tower and sector through which communications over **TT4** were made ("cell-site location information") during the 60 days preceding the date of this Order; and real-time cell-site location information for **TT4** during the authorized period of interception. The Court further finds that the Applicant has certified,

4

pursuant to 18 U.S.C. § 3122, that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the FBI and discussed in the affidavit.

**IT IS FURTHER ORDERED** that U.S. Cellular shall disclose the Requested Location Information concerning **TT4** during the authorized period of interception, and shall initiate a signal to determine the location of **TT4** on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and shall furnish the information, facilities, and technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of **TT4**, at any time of day or night, owing to the potential need to locate **TT4** outside of daytime hours.

**IT IS FURTHER ORDERED** that this Order be executed by service on U.S. Cellular no later than 10 days from the date that the Order is entered.

**IT IS FURTHER ORDERED** that the furnishing of said information, facilities, and technical assistance by U.S. Cellular shall terminate thirty days measured from the earlier of the day on which the investigative or law enforcement officers begin to conduct the interception of wire communications, pursuant to this Order or ten days from the date of this Order, unless otherwise ordered by this Court.

**IT IS FURTHER ORDERED** that the furnishing of such information, facilities and assistance by U.S. Cellular shall be compensated for by the United States at the prevailing rate.

**IT IS FURTHER ORDERED** that the warrant for the Requested Location Information be returned to the issuing judicial officer within 10 days after the termination of the authorized period of interception.

**IT IS FURTHER ORDERED**, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that service of notice of the acquisition of the Requested Location Information may be delayed for a period not to exceed 120 days from the date that the Order is entered. There is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **TT4** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. The period of delay may thereafter be extended by the court for good cause shown.

**IT IS FURTHER ORDERED** that the service providers, their agents and employees not disclose to or cause disclosure of this court's Order or the request for information, assistance, and facilities by the FBI or the existence of this investigation to any person other than those of their agents and employees who require said information to accomplish the services hereby ordered. In particular, said service providers and their agents and employees shall not make such disclosure to a lessee, telephone subscriber, or any interceptee or participant in the intercepted communications.

**IT IS FURTHER ORDERED** that this authorization to intercept wire and electronic communications shall be executed as soon as practicable after the signing of this Order, and all monitoring of wire and electronic communications intercepted shall be limited to those

5

communications relevant to the pending investigation, in accordance with the minimization requirement of 18 U.S.C. § 2518(5) and must terminate upon attainment of the authorized objective, or in any event, at the end of thirty (30) days from the earlier of the day on which investigative or law enforcement officers first begin to conduct an interception under this Order or ten (10) days after this Order is entered. All monitoring of wire and electronic communications shall be conducted in such a way as to minimize the interception and disclosure of communications not relevant to the investigation, or otherwise criminal in nature. Monitoring of conversations must immediately terminate when it is determined that the conversation is unrelated to communications subject to interception under Chapter 119 of Title 18, United States Code. Interception must be suspended immediately when it is determined through voice identification, physical surveillance, or otherwise, that none of the named interceptees or any of their confederates, when identified, are participants in the conversation, unless it is determined during a portion of the conversation already overheard that the conversation is criminal in nature. If the conversation is minimized, the monitoring agent may spot-check to ensure that the conversation has not turned to criminal matters. Special attention shall be given to minimize all privileged communications. For electronic communications (i.e. text messages), each text message will be reviewed over a secure system, and based on the identities of the sender and recipient and the content of the message, monitoring personnel will determine as soon as practicable after interception whether the text message appears to be relevant to the investigation or otherwise criminal in nature. If the message is not criminal in nature, the message shall be minimized and not accessed by other members of the investigative team. If the message appears to be privileged, it will be marked "privileged" and secured from access by other members of the investigative team. If a text message appears to be relevant to the investigation or otherwise criminal in nature, it may be shared with the other agents and monitors involved in the investigation. If a text message is minimized or determined to be privileged, it will not be disseminated to other members of the investigative team. All intercepted text messages will be sealed with the court upon the expiration of the court's Order authorizing the interception. If the monitoring location is not staffed at all times, it shall be kept secured with access limited to only authorized monitoring personnel and their supervising agents.

**IT IS FURTHER ORDERED** that the **FBI** will utilize a filter program in its electronic communications collection system that will automatically identify and block voice calls (which are wire communications) from being intercepted by filtering them out of the electronic communications packet data stream before they are recorded. If a voice call is not filtered out of the packet data stream and is recorded, the call will not be monitored or otherwise accessed through the electronic communications presentation system, and **FBI** will preserve and seal such communications in the same manner as other intercepted electronic communications.

**IT IS FURTHER ORDERED** that in the event the intercepted communications are conducted in a foreign language or code and an expert in that foreign language or code is not reasonably available during the interception period, minimization may be accomplished as soon as practicable after such interception ("Post-Minimization"). Authorization is herein granted to utilize civilian interpreters in the event interpreters employed by the government are unavailable.

**IT IS FURTHER ORDERED** that an interception under this Order may be conducted in whole or in part by government personnel, or by individuals operating under a contract with the

government, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception.

Pursuant to 18 U.S.C. § 2518(3), in the event that **TT4** is used outside the territorial jurisdiction of the Court, interceptions may continue in the Northern District of West Virginia where communications will be first heard and/or read and minimized.

**IT IS FURTHER ORDERED** that this Order is binding on any subsequent service provider which provides service to **TT4** upon service of a certified copy of this Order without further Order of this Court being required.

**IT IS FURTHER ORDERED** that the applicant shall provide the court with a report on or about every tenth day following the date when interceptions begin showing what progress has been made toward achievement of the authorized objectives and the need for continued interception. If any of the above reports should become due on a weekend or holiday, it is further provided that such report shall become due on the next business day thereafter.

**IT IS FURTHER ORDERED** that no inventory or return of the results of the foregoing interception need be made, other than the above-required reports, before 90 days from the date of the expiration of this Order, or any extension of the Order, or at such time as the Court in its discretion may require.

**IT IS FURTHER ORDERED** that, upon an ex parte showing of good cause to a judge of competent jurisdiction, the service of the above inventory or return may be postponed for a further reasonable period of time.

**IT IS FURTHER ORDERED** that this matter, the Application, Affidavit, Order and all interim reports filed with the court be **SEALED** until further order of this court, except that the Clerk's Office may provide the United States with two certified copies of the Application, Affidavit, this Order, and Order to Service Provider. The United States may provide one certified copy of each to the investigating officers.

Dated: _August 29, 2018_
Time: _1:19 pm._

_____
The Honorable Gina M. Groh
Chief United States District Judge
Northern District of West Virginia